**UNITED STATES, Appellee,**

v.

**Sergeant Mark T. SHERMAN, SSN 559–25–5836, United States Army, Appellant.**

**SPCM 16378.**

U. S. Army Court of Military Review.

30 June 1982.

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Major James F. Nagle, JAGC, Captain Richard W. Vitaris, JAGC, and Captain Edward J. Walinsky, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, Captain Kenneth H. Clevenger, JAGC, and Captain James C. Underhill, Jr., JAGC, were on the pleadings for appellee.

Before MITCHELL, MILLER and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

LEWIS, Judge:

The principal issues in this case [1] involve whether the appellant lacks standing to contest the legality of the search of a third party's mobile home and the consequences of both the appellant's and the Government's failure at trial to litigate standing. The appellant also challenges two search warrants that were obtained prior to searches [2] that produced the marihuana he was convicted of possessing. These challenges are based upon his claim that the supporting affidavits contained purposeful misstatements of material facts relating to probable cause.

1. Contrary to his pleas, appellant was convicted of the attempted sale of marihuana, possession of 111 grams of marihuana and conspiracy to sell marihuana. He was sentenced to a reduction to the grade of E–1, forfeiture of $334.00 pay per month for three months, three months confinement at hard labor and a bad-conduct discharge. Confinement in excess of seven days was suspended and application of the forfeitures was deferred by the convening authority.

2. The first search was of appellant's privately owned pick-up truck. The second was of one Sergeant Nobb's mobile home.

**980**

■ We may quickly dispose of the matter of the first search, *viz.* that of the truck. As we held in the unpublished companion to this case, *United States v. Kurth*, S.P.C.M. 16367 (A.C.M.R. 23 December 1981), *pet. denied* 13 M.J. 216 (C.M.A.1982), the search of the vehicle was incident to the occupants' apprehension based upon probable cause, *Arkansas v. Sanders*, 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979) and *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In *Kurth*, we focused on the lawfulness of the search and merely observed (perhaps incorrectly) that by responding directly to Kurth's probable cause and defective warrant objections, the Government at trial conceded Kurth's standing to raise them. Because of the patent lawfulness of the search in *Kurth*, we were able to pass over the question of his standing to complain. In the case before us now, we come to the same conclusion regarding the search of the appellant's truck—it was patently lawful without regard to any search warrant or authorization. In this connection, it cannot be gainsaid that the appellant possessed standing as regards this search.

We are less sanguine about both the probable cause supporting the search of the mobile home and appellant's standing to complaint about it. A brief exposition of the facts will illustrate. °

During the evening of 24 April 1981, a Criminal Investigation Division (CID) informant named Webster negotiated in one Kurth's barracks room the purchase of one pound of marihuana for $500. Webster advanced $250 with the understanding that the balance would be paid when Kurth delivered the marihuana later that evening. The appellant, Kurth's *roommate*, was present and participated in the negotiations in a manner calculated to encourage the purchase. Webster knew that the appellant

had a vehicle and, from the fact that delivery had to be delayed for a short while, assumed that the appellant and Kurth did not then have physical possession of the marihuana but would have to leave soon to obtain it. These facts, along with others, were conveyed to the CID, who observed the appellant and Kurth almost immediately leave their barracks on main post, enter appellant's truck and drive to an on-post trailer park. The appellant and Kurth left their vehicle to spend approximately 15 minutes inside a trailer later identified as belonging to Sergeant Nobbs. Back in the truck, the appellant and Kurth drove back toward main post where the truck was stopped and they were apprehended. A search of the truck produced 26 grams of marihuana. Based upon this, the CID reasoned that there was more marihuana to be found at the trailer and obtained from the Deputy Post Commander authority to search the trailer. Armed with a search "warrant," the CID returned to the trailer, knocked on its door, stated their purpose and were told by Sergeant Nobbs, "You don't need a search warrant. I know what you're here for." Sergeant Nobbs then went to a clock, removed a shopping bag containing the marihuana and gave it to the police.

■ Notwithstanding the conclusions of both the CID and the Deputy Post Commander,[3] we fail to find probable cause in the above facts to support the search of the trailer even assuming the accuracy and completeness of the supporting affidavit.[4] While there was more than sufficient reason from Webster's information and what they had seen themselves for the CID to believe there was marihuana in the truck when they apprehended its occupants and searched it, logic compels a contrary conclusion concerning the trailer. The timing of

---

3. He apparently had been delegated the commander's authority to authorize searches based upon probable cause. He exercised that authority in this case well before such delegations were disapproved by the Court of Military Appeals in *United States v. Kalscheuer*, 11 M.J. 373 (C.M.A.1981).

4. While not presenting the same specific theory that we utilize in deciding the probable cause aspect of this issue, the trial defense counsel did raise lack of probable cause, thereby building a record of evidence sufficient for initial decision and later review. The issue was thus preserved.

events and the sequences of Kurth's and appellant's movements made it appear until the truck was searched that the trailer was the source of the marihuana. After the truck search produced a mere 26 grams of the substance, the *only* reasonable conclusion was that whatever marihuana stocks had been in the trailer were now exhausted and there would be no more found there.[5] Indeed, this conclusion is sharpened because of the fact that the time for delivery of the pound was fast approaching.

■ We are then confronted with the standing issue; *i.e.*, whether the *appellant's* constitutional right under the Fourth Amendment to be secure against unreasonable searches and seizures had been violated. Clearly, had the CID executed the authorization to search his trailer, Sergeant Nobbs's right would have been violated. That the bag of contraband was surrendered by Nobbs immediately upon the policemen's announcement of their intention to search does not change this conclusion.

■ We turn to see whether appellant, in the course of his motion to suppress the fruits of the unlawful search, ever established that it was *his* right that was violated. Since *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), persons charged with "possession" offenses no longer enjoy automatic standing to mount a challenge of the lawfulness of a search without regard to whether they had a reasonable expectation of privacy in the premises searched. The instant case was tried nearly a full year after *Salvucci.* Further, Executive Order 12198, dated 12 March 1980 and effective 1 September 1980, engrafted the *Salvucci* requirement into Military Rules of Evidence (M.R.E.) in its Rule 311(a)(2).[6] Notwithstanding the requirement to establish that he had a reasonable expectation of privacy in Sergeant Nobbs's premises as a threshold matter, the appellant made no effort to do so. Accordingly, whether or not the search was lawful, appellant cannot now be heard to complain unless we accept his invitation to find that the Government is estopped from now asserting a lack of standing.

■ We decline to do so. We begin our analysis with the observation that under both *Salvucci* and M.R.E. 311(a)(2), it is the burden of the party seeking application of the exclusionary rule to show his entitlement to its invocation. In the absence of an express rule to the contrary, the opposing party does not lose its ability to later raise the lack of movant's standing. *United States v. Hansen*, 652 F.2d 1374 (10th Cir. 1981). An exception to this rule of non-estoppel or non-waiver exists in the situation addressed by the Supreme Court in *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), where the Government affirmatively asserted a contrary position at the intermediate appellate level and, initially, even before the Supreme Court. Further in *Steagald*, the express findings of the magistrate and the trial court addressed the matter of Steagald's qualifying privacy interest in the premises searched and were permitted to go unchallenged by the Government. Such is not the case here. There were no assertions or concessions by either party at trial regarding the appellant's privacy interests in the premises. Similarly, there were no findings on this issue at trial. In short, the parties and the trial judge appear to have completely overlooked the matter. Accordingly, the appellant was in no way misled to

---

5. What might still reasonably have been expected to be found there would be some of the bills making up the $250.00 "front money." This was not listed on the search authorization, however.

6. The drafters of the Military Rules of Evidence are to be congratulated for some fine legal craftsmanship if not prescience in anticipating the holding of *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980),

based upon *United States v. Rakas*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). "Hedging their bet" slightly, they still allowed for the exception for standing permitted by *United States v. Jones*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) "only to the extent that *Jones* [was] constitutionally mandated." Analysis of the Military Rules of Evidence, Appendix 18, Manual for Courts-Martial, United States, 1969 (Revised edition).

forego his burden under *Salvucci* and M.R.E. 311(a)(2) by any action of the Government, and the rule of *Steagald* is inapposite.

We are left with the appellant in our Court attempting to invoke the exclusionary rule where he had failed to establish his entitlement to it at trial. In our view, he is too late.

The findings of guilty and the sentence are affirmed.

Senior Judge MITCHELL and Judge MILLER concur.